PARRO, J.
]2The plaintiff in a suit for partition of former community property, which was consolidated with her ex-husband’s succession proceeding, appeals a judgment relating to the partition in favor of the succession and the person serving as its executrix. On appeal, the plaintiff has also filed an exception raising the objection of prescription with respect to a claim for reimbursement filed by the succession. For the reasons that follow, the judgment is vacated, and the exception and this matter are remanded.

Factual and Procedural Background

Judith Len Caldwell Sessions McKillop (McKillop)[1] and Charles Robert Sessions *955 (Sessions) were divorced by judgment dated February 9, 1987.[2] During their marriage, McKillop and Sessions purchased a home, subject to a mortgage executed on May 24, 1979, securing a debt evidenced by a promissory note payable to bearer in the amount of $46,500 with an interest rate of 10 percent, which note was payable in monthly installments of $408.27 for a term of 30 years. Following their divorce, no steps were taken by McKillop or Sessions to partition the patrimony that belonged to their former community of acquets and gains, including the home in which Sessions continued to reside. At some point, Evelyn Marie Rosier (Rosier) moved into the home with him.
On January 2, 1994, Sessions died in an automobile accident. In his handwritten testament dated January 29, 1990, he left all of his “real and personal property to Evelyn Marie Rosier the woman I love,” with whom he had been living. On April 22, 1994, Rosier filed a petition for probate of Sessions’ olographic testament, praying for the probate of Sessions’ testament, the confirmation of her as the testamentary |gexecutrix, and the issuance of letters testamentary to her.[3] In the detailed descriptive list that was filed with the petition for probate, Rosier identified a one-half interest in the home in question as Sessions’ separate property, with a related indebtedness as a separate debt.
On April 25, 1994, McKillop and members of Sessions’ family[4] filed a petition to appoint an administrator of Sessions’ succession and to appoint a notary to search for a testament and life insurance policies. Sessions’ mother sought to be appointed as the administratrix. Following the denial of their motion for the appointment of an administrator, McKillop and the others (claiming to be creditors of the succession) filed a motion on August 22, 1995, to compel the payment of their claims against the succession and for an accounting of the assets and liabilities of Sessions’ succession. In that motion, McKillop alleged that their community property had not been partitioned and that the home listed by Rosier in the detailed descriptive list belonged to McKillop and Sessions’ former community. Thus, by that motion, McKil-lop sought to partition the community property and to recover from Rosier one-half of the fair rental value of the home from the date of Sessions’ death through the present. Pursuant to this motion, Rosier was ordered on August 24,1995, to file within 30 days a tableau of distribution and an accounting of the succession’s assets and liabilities.
Rosier then filed an exception styled as an objection of unauthorized use of a summary proceeding and/or improper cu-mulation of actions in connection with McKillop’s request for a partition in the succession proceeding. On September 29, 1995, pursuant to LSA-R.S. 9:2801, McKillop filed a separate action against Sessions’ succession to partition the community property and for an accounting by the executrix |4of Sessions’ succession.[5] *956 In her petition, McKillop sought to have Rosier, as the executrix of Sessions’ succession, file a sworn detailed descriptive list of assets and liabilities belonging to the former community. McKillop prayed for a judgment partitioning the former community property. On October 6, 1995, Rosier was ordered to file a detailed descriptive list within 60 days of the service of McKillop’s petition. In connection with a subsequent ex parte motion, Rosier was ordered on December 20, 1995, to file a sworn detailed descriptive list within 90 days.
In a supplemental and amending petition in the partition proceeding, McKillop, among other things, sought reimbursement for the fair rental value of the community home from the date of the divorce until a full and final partition of the community and, in the alternative, sought sequestration of Rosier from the community property pending the partition due to a conflict of interest.
In the succession proceeding, Rosier was again ordered on January 28, 1996, to file within 60 days a tableau of distribution and an accounting of her administration. At the end of January 1996, Rosier’s counsel withdrew as counsel of record in both proceedings. New counsel did not enroll on Rosier’s behalf until August 23, 2001, after which Rosier, pursuant to LSA-R.S. 9:2801(A)(1)(a), sought an order requiring McKillop, as the petitioner in the partition proceeding, to file a sworn detailed descriptive list within 45 days.[6] In the absence of McKillop’s compliance with the resulting September 19, 2001 court order, Rosier by rule to show cause filed on December 19, 2002, sought to have the court accept her sworn detailed descriptive list, filed that same day, as a judicial determination of the community and to have the court partition the property between the parties, ie., McKillop and Sessions’ succession. In the memorandum in support of her rule to show cause, Rosier proposed the following partition:
|5(a) that the only available asset, namely the house, be partitioned to the Succession with the Succession assuming the current mortgage[,] (b) the Succession and [McKillop] each to keep the [movables] in their possession^] and (c) to equalize payments, there be judgment in favor of the Succession and against [McKillop] for payment, plus each party to pay their own costs.
Rosier’s list identified the home as community property valued at $75,000 and set forth a claim by the succession for reimbursement from McKillop for one-half of the payments on the mortgage note from February 9, 1987, through December 1, 2002, in the amount of $38,581.52.[7] Rosier’s list also set forth a principal balance of $22,550 remaining on the mortgage note (a community obligation) as of December 1, 2002.[8]
In response to Rosier’s motion for the acceptance of her list, McKillop argued that LSA-R.S. 9:2801 was not applicable in this case since the property was also in *957 volved in a succession proceeding, citing Succession of Brown, 468 So.2d 794 (La.App. 1st Cir.1985). McKillop instead urged the applicability of former LSA-C.C. art. 1328, pertaining to judicial partitions by co-owners.[9] McKillop’s subsequently filed sworn detailed descriptive list disclosed a present value of $100,000 for the home and included a reimbursement claim for one-half of the rental value of the home from the date of Sessions’ death to February 21, 2003, in the amount of $30,136.42.
On January 22, 2003, McKillop and members of Sessions’ family filed a motion to have Rosier removed from the position of executrix and to have Sessions’ mother appointed as the administratrix of the succession. That motion was grounded on allegations that Rosier failed to make any effort to wind up the affairs of the succession, failed to pay their claims as creditors, effectively converted the former community property to her own use, failed to partition the former community property, and breached her fiduciary duty. Alternatively, they requested that Rosier be compelled to provide security. Rosier opposed the motion, contending that the resolution of | fjMcKillop’s suit for partition was critical to the conclusion of the succession proceeding in that the solvency of Sessions’ succession was dependent on the partition of the former community property and the resolution of the reimbursement claims. Rosier averred that McKillop’s actions in the partition proceeding thwarted her efforts in the succession proceeding, thus the motion to have her removed from the position of executrix should be denied.
At the hearing on the motion to remove, the trial court refused to remove Rosier as the executrix and requested that the parties submit post-trial memoranda regarding the succession’s claim for reimbursement in connection with mortgage payments and McKillop’s claim for the rental value of the home. Pending the trial court’s ruling on that matter, McKil-lop and members of Sessions’ family filed a motion for summary judgment with respect to the amount of rent owed by Rosier, the amount of the indebtedness owed to each, and the partition of the community property. This motion was opposed by Rosier on procedural grounds. A hearing by the trial court followed.
After considering the merits of the two pending motions and in adjudicating McKillop’s petition for the partition of the community property, the trial court, among other things, found that McKillop owed the succession $54,065.40 for one-half of the mortgage payments made by Sessions and/or Rosier from the date of the divorce (February 9, 1987) through July 2007. The value of McKillop’s one-half interest in the home was declared to be $42,500. The trial court dismissed McKil-lop’s claims for rental value based on the lack of evidence that McKillop was denied the right to use the co-owned property or that there was an agreement between the spouses or a court order as required by LSA-R.S. 9:374(C). However, in light of Sessions and Rosier’s use and enjoyment of the property, the trial court denied Rosier’s claim for reimbursement for the costs of repairs and improvements. See LSA-C.C. art. 806. Based on those findings, the trial court determined that partition by notation was not practical since the value of McKillop’s one-half interest in the home was considerably less than the amount that she owed in reimbursement to Sessions’ succession.
*958 17With respect to McKillop’s petition for partition of the community property, the trial court judgment, in pertinent part, provides:
IT IS ORDERED, ADJUDGED AND DECREED that partition by Imitation will not benefit any of the parties therefore Judith Caldwell Sessions is hereby ordered to execute documents to sell her ½ interest in the St. Paul Home to Evelyn Rosier solely in consideration of the reimbursements due Evelyn Rosier [10] from Judith Caldwell Sessions and the Partition of the Community Property is final. The parties [are] to pay their own costs. Costs of sale [are] to be shared equally between the parties.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that as to claims against the Succession of Charles Robert-Sessions, that the Succession of Charles Robert Sessions owes only Lorna Jean Sessions Watkins the sum of $2,000 and Marguerite Sessions the sum of $7,986.70. Payment to be made upon the conveyance of the St. Paul Home to Evelyn Rosier. The Motion to Remove Evelyn Rosier as Executrix is denied. The Motion for Summary Judgment is denied. No party is entitled to any reimbursement of late fees, costs, penalties, interest or any consequential damages or attorney fees.
McKillop appealed, contending that the trial court erred in denying the motion to remove Rosier from the position of executrix, in failing to award a reasonable rental value for the use of the home, in declaring that Sessions’ succession was entitled to reimbursement for one-half of the mortgage payments, in ordering the transfer to Rosier of the title, ownership, and possession of the home, and in failing to award post-judgment interest in connection with awards made to other creditors of the estate, which were made contingent on the subsequent transfer of the property.
On appeal, McKillop filed an exception raising the objection of prescription with respect to the claim by Sessions’ succession for reimbursement for one-half of the mortgage payments, which she asserted is governed by the ten-year liberative prescriptive period applicable to personal actions.

Discussion

In partitioning the former community property, the trial court ordered that McKillop execute documents to sell her one-half interest in the home to Rosier solely in consideration for the reimbursement owed by McKillop to Rosier. McKil-lop submitted |8that the trial court erred in ordering the transfer of the title, ownership, and possession of the home to Rosier.
Louisiana Revised Statute 9:2801 details the procedure for the valuation and allocation of community assets and liabilities, seeking to make community property partitions as fair as possible. It affords the judge discretion to consider all of the facts and circumstances and to fashion a workable and equitable partition. Succession of Brown, 468 So.2d at 796. In Succession of Brown, this court considered the issue of whether LSA-R.S. 9:2801 applies to the partition of former community property that was owned in indivisión by a former spouse and the heirs of the deceased. At the time of the decision in Succession of Brown, section 2801 provided, in pertinent part:
“When the spouses are unable to agree on a partition of community property or on the settlement of the *959 claims between the spouses arising from the matrimonial regime, either spouse, upon termination of the matrimonial regime, or as an incident of the action which would result in a termination of the matrimonial regime, may-institute a proceeding, which shall be conducted in accordance with the following rules:” ... [Emphasis added.]
The court in Succession of Brown recognized that, by its own terms, section 2801 applies to a controversy between the spouses and held that section 2801 could not be extended by analogy to all partitions involving community property, particularly a partition between the deceased’s ex-wife and his heirs. See Succession of Brown, 468 So.2d at 796. A partition controversy between ordinary co-owners, such as an ex-wife and the five heirs, was found to be governed by the general rules of judicial partition, former LSA-C.C. arts. 1323 et seq., and not by section 2801. See Succession of Brown, 468 So.2d at 796.
The introductory paragraph of section 2801 was amended by the legislature in 1995, effective January 1, 1996,[11] to provide:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which |9shall be conducted in accordance with the following rules: [Emphasis added.]
The addition of the phrase “from the co-ownership of former community property” did not change the fact that section 2801 applies to a controversy between the “spouses.” Since the controversy in question is between Sessions’ ex-wife and his succession representative,[12] we find that McKillop was correct in her assertion that section 2801 is not applicable. Until the succession is complete, and the legatee is sent into possession of Sessions’ one-half interest in the former community property and McKillop is recognized in the judgment of possession as the owner of the other one-half interest in the former community property, McKillop’s efforts to partition the community property are premature.
We therefore vacate the trial court’s judgment and remand the exception raising the objection of prescription and this entire matter for further proceedings in the succession proceeding consistent with the views expressed in this opinion.[13] On remand, the parties are to be given an opportunity to properly assert their claims in the succession proceedings, being mindful of the laws on seizing, co-ownership, termination of the community, solidarity, and subrogation. Costs of this appeal are *960 assessed against the Succession of Charles Robert Sessions.
VACATED AND REMANDED.

. McKillop is also referred to in the record as Judy Len Caldwell Sessions.

.Although the judgment of divorce indicates that it was signed by the trial court on February 9, 1986, a filing date of February 9, 1987, is reflected on the document. Furthermore, the parties referenced the date of divorce and termination of the community as February 9, 1987. Therefore, we will assume for purposes of this opinion that the correct judgment date is February 9, 1987.

. Rosier was confirmed as the testamentary executrix by order dated April 29, 1994, and letters testamentary were issued.

. His mother, two sisters, and brother were the other interested parties.

. Although no judgment or order was ever issued transferring the partition proceeding to the judge handling the succession proceeding, subsequent to August 6, 2003, all further ac *956 tions took place in the succession proceeding. For completeness of the record, a formal order of transfer was signed by the judge of each division of court on May 19, 2008.

.Notably, the record in the partition proceeding did not contain a sworn detailed descriptive list that should have been filed by McKil-lop.

. Rosier arrived at this sum by determining that 189 monthly payments of $408.27 had been made for total payments of $77,163.03. This amount was then divided by two in calculating McKillop’s share to be $38,581.52 for the stated period of time.

. A payoff statement quote dated August 2, 2007, disclosed a total payoff balance due of $8,684.02 as of September 1, 2007.

. Former LSA-C.C. art. 1323 was repealed by 1991 La. Acts, No. 689, § 1. See LSA-C.C. art. 809.

10. We assume the trial court meant that the reimbursements were due Rosier in her capacity as executrix and not as an individual.

. See 1995 La. Acts, No. 433, § 2.

. Sessions’ succession is testate. Sessions died without descendents or a surviving spouse. In his testament, Sessions bequeathed everything to Rosier. The validity of Session’s testament has not been challenged by those who would have otherwise stood to inherit from Sessions under the laws of intestacy. Thus, at the conclusion of the succession proceeding, Rosier stands to inherit Sessions’ one-half interest in the home in question.

.In light of this conclusion, we pretermit discussion of the other issues raised on appeal, as well as the objection of prescription that was raised by McKillop in an exception filed with this court.